UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

STANLEY WHITTED,

                    Plaintiff,

      v.                                 9:02-CV-1331
                                               (DNH/GHL)
GLENN S. GOORD, Commissioner of Corrections;
DANIEL SENKOWSKI, Superintendent of Clinton
Correctional Facility; ISHMAEL CRUZ, New York
State Parole Officer; JOY TREMBLY, New York
State Parole Revocation Hearing Officer,

                    Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

APPEARANCES:                           OF COUNSEL:

STANLEY WHITTED
02-A-4569
Plaintiff, *Pro Se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

HON. ELIOT L. SPITZER                JAMES J. SEAMAN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

GEORGE H. LOWE, United States Magistrate Judge[1]

---

[1]     I would like to thank my summer intern, Kristy L. Patchet, currently a second-year law student at Syracuse University College of Law, who assisted in the researching and writing of this Report-Recommendation.

1

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c).  In this civil rights complaint brought under 42 U.S.C. § 1983, Inmate Stanley Whitted ("Plaintiff") alleges that Department of Correctional Services Commissioner Glenn S. Goord, Clinton Correctional Facility Superintendent Daniel A. Senkowski, New York State Division of Parole Officer Ismael Cruz, and New York State Board of Parole Hearing Officer Jay Trembly ("Defendants") violated his Eighth and Fourteenth Amendment rights by causing him to be held in jail approximately fifty-five days too long.  (Dkt. No. 1 [Verified Complaint].)

More specifically, liberally construed, Plaintiff's *pro se* Complaint alleges that:

(1)  Defendants Goord and Senkowski intentionally or recklessly caused Plaintiff to be held in the Clinton Correctional Facility until February 20, 2001--twenty-eight days past his maximum expiration date of January 22, 2001 (and several months past his proper conditional release date);

(2)  Defendants Goord, Senkowski and Cruz intentionally or recklessly caused Plaintiff to be conditionally released on February 20, 2001, to parole supervision, rather than without conditions;

(3)  Defendant Cruz intentionally or recklessly erroneously charged Plaintiff with violating the conditions of his parole (after Plaintiff was charged by Albany authorities with committing a robbery);

(4)  Defendant Trembly intentionally or recklessly found Plaintiff guilty of violating the conditions of his parole, due to the robbery charge; and

(5)  Through their actions described in Paragraphs (2) through (4), Defendants caused Plaintiff to be held in the Albany County Correctional Facility until May 31, 2001--twenty-seven days past when he should have been released from that facility on May 4, 2001.

(Dkt. No. 1 [Verified Complaint].)[2]

Currently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 22.)  Generally, Defendants' motion, which Plaintiff has opposed (Dkt. No. 25), raises the following seven issues: (1) whether Plaintiff has established a Fourteenth Amendment due process claim; (2) whether Plaintiff has established a Fourteenth Amendment equal protection claim; (3) whether Plaintiff has established an Eighth Amendment cruel-and-unusual-punishment claim; (4) whether Plaintiff has established that Defendants were personally involved in the alleged constitutional violations; (5) whether Defendants are protected by qualified immunity; (6) whether, due to the lack of "physical injury," Plaintiff can be awarded anything but nominal damages; and (7) whether Plaintiff exhausted all of his administrative remedies.  (Dkt. No. 22, Part 56 [Mem. of Law.])  In addition, Defendants argue that Plaintiff's claim against Defendant Trembly should be dismissed due to Plaintiff's failure to serve that Defendant.  (Dkt. No. 22, Part 2, ¶ 2 [Seaman Aff.].)

For the reasons discussed below, I reach the following conclusions: (1) Plaintiff has not established a Fourteenth Amendment due process claim, (2) Plaintiff has not established a Fourteenth Amendment equal protection claim; (3) Plaintiff has not established an Eighth Amendment cruel-and-unusual-punishment claim; (4) Plaintiff has not established that Defendants were personally involved in the aforementioned alleged constitutional violations; (5)

_____

[2]        I note that, in addition, Plaintiff refers to a Fourth Amendment violation in his table of contents and "Statement of the Case" in his memorandum of law.  (Dkt. No. 25, Part 2 [Plf.'s Opposition Mem. of Law.])  However, Plaintiff does not allege such a violation in his Complaint.  (Dkt. No. 1 at 5 and Attachment thereto [Verified Complaint].)  Nor does Plaintiff even discuss such a violation in the body of his memorandum of law.  (Dkt. No. 25, Part 2 at 1-30 [Plf.'s Opposition Mem. of Law.])

Defendants are protected by qualified immunity; (6) because I have already found that adequate reason exists to recommend the granting of Defendants' motion for summary judgment, I need not, and do not, reach the issue of whether, due to the lack of "physical injury," Plaintiff can be awarded anything but nominal damages; and (7) because I have already found that adequate reason exists to recommend the granting of Defendants' motion for summary judgment, I need not, and do not, reach the issue of whether Plaintiff exhausted all of his administrative remedies. In addition, I conclude that Plaintiff's claim against Defendant Trembly should be dismissed due to Plaintiff's failure to serve, and failure to prosecute his case against, that Defendant.  As a result, I recommend that Defendants' motion for summary judgment be granted.

## I.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts

---

[3]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

4

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court must view a *pro se* plaintiff's pleadings.  "[I]n actions in which one of the parties appears *pro se,* this Court is faced with the . . . responsibility of granting significant liberality in how *pro se* pleadings are construed."  *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 467 (S.D.N.Y. 1998); *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* pleadings held "to less stringent standards than formal pleadings drafted by lawyers."); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir. 1989).  For example, where a plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest. *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

However, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws

that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).  In other words, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment." *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) (citations omitted); *accord, Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) (citations omitted).

## II.    STATEMENT OF MATERIAL FACTS

Generally, the facts set forth in a defendant's Rule 7.1 Statement of Material Facts are deemed admitted to the extent those facts are material, supported by the evidence in the record,[4] and not specifically controverted by the plaintiff.  *See* Local Rule 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.").[5]

To specifically controvert such facts, a plaintiff need not file a response to the Statement of Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and that "set[s] forth a specific citation to the record where the factual issue arises," as described in Local Rule 7.1(a)(3), although that is the preferred method.  Rather, the plaintiff may specifically controvert

---

[4]        *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, No. 03-7030, 2004 WL 1472675, at *3 (2d Cir. July 1, 2004) (citations omitted).

[5]        *See Mehlenbacher v. Slafrad, et al.*, No. 9:99-CV-2127, 2003 U.S. Dist. LEXIS 9248, at *4 (N.D.N.Y. June 4, 2003); *Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., Inc.*, No. 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002); *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001).

such facts through a verified complaint and/or an affidavit in opposition to the defendant's motion.[6]

However, such affidavits must, among other things, be based "on personal knowledge." Fed. R. Civ. P. 56(e) (requiring "personal knowledge"); *U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (citations omitted), *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).  An affidavit is not based on personal knowledge if, for example, it is based on mere suspicion, rumor, hearsay, or secondhand information.  *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

Similarly, such affidavits must not be general and conclusory.  *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") (citations omitted); *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting "conclusory" statements in opposing affidavit); *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from

---

[6]      *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted); Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

degenerating into mere elaboration of conclusory pleadings"); Fed. R. Civ. P. 56(e) (requiring

more than "mere allegations or denials of . . . [a pleading] . . . but . . . specific facts showing that

there is a genuine issue for trial").

Here, the following material facts, even when viewed most favorably to Plaintiff, are

supported by evidence in the record, and are not specifically controverted by Plaintiff:[7]

1.    At some point between August 1, 2000, and October 1, 2000, Plaintiff (a New

York State Department of Corrections inmate) was transferred from Downstate Correctional

Facility to Clinton Correctional Facility ("Clinton C.F.").[8]   At the time, Defendant Daniel A.

Senkowski was the Superintendent of Clinton C.F. and had responsibility for the overall

operation of the facility.[9]

**Plaintiff Claimed that His "Maximum Expiration Date"
Was Incorrect**

2.    On or about October 4, 2000, Plaintiff sent a letter to the Clinton C.F. Parole

Office, claiming that his maximum expiration ("M.E.") date had erroneously been extended due

---

[7]    The parties may note that this recitation of the facts is somewhat shorter than Defendants' fifty-nine paragraph Rule 7.1 Statement, and that it has a somewhat different focus than Plaintiff's Verified Complaint and Opposition Affidavit.  (Dkt. No. 22, Part 55 [Defs.' Rule 7.1 Statement]; Dkt. No. 1 and Attachment thereto [Verified Complaint]; Dkt. No. 25, Part 1 [Plf.'s Opposition Aff.].)  The reason for these differences is that I find that both Defendants' summary of the facts and Plaintiff's summary of the facts contain many factual assertions that are simply *immaterial* to Defendants' motion, which, in essence, is premised on (1) Defendants' lack of intent and personal involvement in the alleged constitutional violations, and (2) the relatively brief periods of Plaintiff's erroneous incarceration.

[8]    (Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint].)

[9]    (Dkt. No. 22, Part 15, ¶ 3 [Senkowski Aff.].)

to an apparent failure to credit him with time he had spent in a county jail.[10]  As a result, Plaintiff

claimed that his M.E. date should be January 22, 2001.[11]

3.      On or about October 6, 2000, Plaintiff sent a letter to Karl Jool at the New York

State Division of Parole's Central Office in Albany, raising the same claim but in more detail.[12]

4.      On or about October 16, 2000, Plaintiff sent a letter to Deborah L. Jarvis, the

Inmate Records Coordinator at Clinton C.F., in which he made the same claim.[13]  However,

unlike the two earlier letters, this letter referenced and enclosed a September 21, 2000, letter that

Plaintiff had received from the Schenectady City Court.[14]  Among other things, the September

21, 2000, letter from City Court states that Plaintiff had been released from jail on his own

recognizance on September 9, 1999–an allegation that Plaintiff makes in support of his claim that

his release date is erroneous.[15]

5.      On November 7, 2000, Plaintiff wrote a letter to Defendant Senkowski, in which

he made the same claim that he had made in his previous letters.[16]

_____

[10]      (Dkt. No. 22, Part 23 [Ex. A to Goslin Aff.].)

[11]      (*Id*.)

[12]      (Dkt. No. 22, Part 24 [Ex. B to Goslin Aff.].)

[13]      (Dkt. No. 22, Part 5 [Ex. A to Jarvis Aff.].)

[14]      (Dkt. No. 22, Part 6 [Ex. B to Jarvis Aff.]; Dkt. No. 22, Part 25 [Ex. C to Goslin Aff.]; Dkt. No. 22, Part 47 [Ex. N to O'Malley Aff.].)

[15]      (*Id*.; Dkt. No. 22, Part 5 [Ex. A to Jarvis Aff.]; Dkt. No. 22, Part 23 [Ex. A to Goslin Aff.]; Dkt. No. 22, Part 24 [Ex. B to Goslin Aff.].)

[16]      (Dkt. No. 22, Part 15, ¶ 6 [Ex. A to Senkowski Aff.].)

**Clinton C.F. (and the New York State Division of Parole)
Responded to Plaintiff's Claim**

6.      On or about October 25, 2000, Debra Meier, a staff member who reports to Ms.

Jarvis (the Inmate Records Coordinator at Clinton C.F.), sent Plaintiff a memorandum

responding to his October 16, 2000, letter to Ms. Jarvis.[17]  In the memorandum, Ms. Meier

informed Plaintiff as follows:

> This is in response to your letter regarding your delinquency date.
> [The Division of] Parole gives the Dept. of Corrections the
> delinquency dates.  The Dept. of Corrections does not have the
> authority to change a delinquency date without documentation from
> [the Division of] Parole.  Therefore, I have forwarded a copy of your
> letter to the [Clinton C.F.] Parole Office.  When information is
> received from them, I will let you know.[18]

7.      On or about November 13, 2000, Ms. Jarvis sent Plaintiff a memorandum

responding to his November 7, 2000, letter to Defendant Senkowski.[19]  In the memorandum, Ms.

Jarvis informed Plaintiff as follows:

> I am in receipt of the memorandum you sent to Supt. Senkowski.  Be
> advised that on October 25, 2000, Ms. Meier notified you that you
> would have to contact the [Clinton C.F.] Parole Office regarding this
> matter.  We have no authority to change Parole Jail time or your
> delinquency date; therefore, enclosed you will find the letter from the
> Schenectady County Cour [sic] that you sent to Supt.[20]

8.      On or about November 16, 2000, Defendant Senkowski sent a memorandum to

---

[17]      (Dkt. No. 22, Part 4, ¶ 3 [Jarvis Aff.].)

[18]      (Dkt. No. 22, Part 4, ¶ 5 [Jarvis Aff.]; Dkt. No. 22, Part 8 [Ex. D to Jarvis Aff.].)

[19]      (Dkt. No. 22, Part 4, ¶ 7 [Jarvis Aff.]; Dkt. No. 22, Part 9 [Ex. E to Jarvis Aff.].)

[20]      (Dkt. No. 22, Part 9 [Ex. E to Jarvis Aff.].)

Plaintiff.[21]  In the memorandum, whose subject line read "Our Recent Discussion – Jail Time," Defendant Senkowski informed Plaintiff as follows:

> As per our discussion, I have reviewed your Jail Time credits with our Inmate Records Coordinator.  It is my understanding that the time you are questioning is not time granted by our jurisdiction – it is an alteration that would have to be made by [the New York State Division of] Parole.[22]

9.     Meanwhile, on or about October 13, 2000, the New York State Division of Parole forwarded Plaintiff's October 6, 2000, letter to Karl Jool to Parole Officer William Sackett at the Clinton C.F. Parole Office, requesting him to "[p]lease handle as you deem appropriate."[23]

10.    At some point between October 13, 2000, and November 30, 2000, Sherie L. Goslin, an Agency Program Aide in the Clinton C.F. Parole Office, was assigned to review, and did review, the following: (1) Plaintiff's October 4, 2000, letter to the Clinton C.F. Parole Office; (2) his October 6, 2000, letter to Karl Jool at the New York State Division of Parole's Central Office in Albany; and (3) his September 21, 2000, letter from the Schenectady City Court.[24]  Ms. Goslin reached the following conclusions: (1) because of agency policy, she was not authorized to revise an inmate's parole jail time credits unless she was provided a "signed and certified disposition from the Sentencing Court which specifies the dates of the inmate's time served for

---

[21]     (Dkt. No. 25, Part 3 [Ex. L to Plf.'s Opposition Mem. of Law].)

[22]     (*Id*.)

[23]     (Dkt. No. 22, Part 9 [Ex. E to Jarvis Aff.]; Dkt. No. 55, ¶ 55 [Defs.' Rule 7.1 Statement]; Dkt. No. 22, Part 22, ¶ 1 [Goslin Aff.].)

[24]     (Dkt. No. 22, Part 22, ¶¶ 1, 4-7 [Goslin Aff.]; Dkt. No. 22, Part 24 [Ex. B to Goslin Aff.]; Dkt. No. 22, Part 26, ¶ 11 [Ex. D to Goslin Aff.].)

the local charges and whether that time was served concurrent with or consecutive to parole jail time";[25] (2) neither Plaintiff's own handwritten letters, nor the September 21, 2000, letter from the Schenectady City Court met the necessary criteria;[26] and (3) none of the other information that was available to her (e.g., Plaintiff's parole jail time certificates, data on the Clinton C.F. Parole Office computer database, etc), allowed her to alter Plaintiff's parole time credits.[27]

11.     On or before November 30, 2000, Ms. Goslin reported her conclusions to her supervisor, Parole Officer Sackett.[28]

12.     On November 30, 2000, Mr. Sackett communicated these conclusions to Defendant Senkowski by e-mail message.[29] Specifically, in the e-mail message, Mr. Sackett wrote:

---

[25]     (Dkt. No. 22, Part 22, ¶ 8 [Goslin Aff.]; Dkt. No. 22, Part 33, ¶ 7 [O'Malley Aff., asserting that "an inmate's recourse for correcting an illegal sentence is set forth under Criminal Procedure Law §440. [The Division of] Parole does not have that authority."].)  *See also New York State Parole Handbook* § 1.2 (NYS Div. of Parole, February 2005) ("If, after contacting the Inmate Records Coordinator, you believe there is still a problem with your time calculation, a letter should be sent to the Clerk of the Court where the sentence was imposed.  The letter should indicate the specific problem and/or what information is being sought.  You should request that certified copies of your sentencing minutes and/or jail time be forwarded to the Inmate Records Coordinator to allow for recomputation of your sentence.").  For an apparent example of such a "signed and certified disposition of the Sentencing Court," see Exhibit Q to the Affidavit of New York State Division of Parole Attorney Patricia E. O'Malley.  (Dkt. No. 22, Part 50 [Ex. Q to O'Malley Aff.].)

[26]     (Dkt. No. 22, Part 22, ¶ 10 [Goslin Aff.].)

[27]     (Dkt. No. 22, Part 22, ¶ 10 [Goslin Aff.].)

[28]     (Dkt. No. 22, Part 22, ¶ 11 [Goslin Aff.]; Dkt. No. 22, Part 26, ¶ 11 [Ex. D to Goslin Aff.].)

[29]     (Dkt. No. 22, Part 22, ¶ 11 [Goslin Aff.]; Dkt. No. 22, Part 26 [Ex. D to Goslin Aff.].)

This clients [sic] time computations are correct.  His parole delinquent date (DD) 9/3/99 was established because of the arrest on the new charge Burglary 3 charge [sic] for which he later plead to Trespass.  Contrary to his claim he was not available to our parole warrant [sic] until 4/7/00 his date of sentencing on the violation (Trespass).  Additionally at his final parole revocation hearing it was a "De Novo Hearing" meaning he is not entitled to the time he claims is owed him.

His current dates are to Parole on 2/19/01 to Albany, N.Y.  His ME date is 8/29/01.[30]

13.     On or about November 30, 2000, Defendant Senkowski sent another memorandum to Plaintiff.[31]  In the memorandum, whose subject line read "Our Recent Discussion – Jail Time," Defendant Senkowski stated as follows: "Be advised the [Clinton C.F.] Parole Office will send you a written response concerning your eligibility for jail time credit via Parole."[32]

**Plaintiff Provided Additional Documents to Clinton C.F.
in Support of His Claim**

14.     On or before January 4, 2001, Plaintiff contacted Prisoners' Legal Services of New York for assistance with his aforementioned claim.[33]

15.     On or about January 4, 2001, Theresa Wells, a legal assistant at Prisoners' Legal Services of New York, sent a letter to the Schenectady County Sheriff, requesting that he send Ms. Jarvis (the Inmate Records Coordinator at Clinton C.F.) a certification of Plaintiff's jail time

---

[30]     (Dkt. No. 22, Part 26 [Ex. D to Goslin Aff.].)

[31]     (Dkt. No. 25, Part 3 [Ex. M to Plf.'s Opposition Mem. of Law].)

[32]     (*Id*.)

[33]     (Dkt. No. 22, Part 10 [Ex. F to Jarvis Aff.].)

at the Schenectady County Jail from September 3, 1999, through April 7, 2000.[34]

16.     On or about January 8, 2000, in response to Ms. Wells' request, Judith Aumiller, of

the Schenectady County Sheriff's Office, forwarded to Ms. Jarvis a copy of Plaintiff's "Bookings

on File."[35]

17.     On or about January 16, 2001, Ms. Aumiller sent a follow-up letter to Ms. Jarvis

in which she listed Plaintiff's multiple incarcerations in the Schenectady County Correctional

Facility between January 19, 1991, and August 28, 2000, when he was returned to state custody.[36]

### Clinton C.F. Reviewed Plaintiff's Additional Documents

18.     On or about January 16, 2001, Ms. Jarvis faxed a copy of these documents to

Parole Officer Sackett (at the Clinton C.F. Parole Office) with a note requesting that the Parole

Office examine the documents to determine if they supported granting Plaintiff any parole jail

time over and above the parole time already awarded to him.[37]

19.     At some point between January 16, 2001, and January 18, 2001, Ms. Goslin (the

aide in the Clinton C.F. Parole Office) was again assigned to review Plaintiff's claim–this time in

light of these additional documents.[38]  Ms. Goslin concluded that she was still not authorized to

---

[34]     (Dkt. No. 22, Part 4, ¶ 8 [Jarvis Aff.]; Dkt. No. 22, Part 10 [Ex. F to Jarvis Aff.].)

[35]     (Dkt. No. 22, Part 4, ¶ 9 [Jarvis Aff.]; Dkt. No. 22, Part 11 [Ex. G to Jarvis Aff.].)

[36]     (Dkt. No. 22, Part 4, ¶ 10 [Jarvis Aff.]; Dkt. No. 22, Part 12 [Ex. H to Jarvis Aff.].)

[37]     (Dkt. No. 22, Part 4, ¶ 11 [Jarvis Aff.]; Dkt. No. 22, Part 13 [Ex. I to Jarvis Aff.].)

[38]     (Dkt. No. 22, Part 22, ¶ 12 [Goslin Aff.]; Dkt. No. 22, Part 27 [Ex. E to Goslin Aff.].)

amend Plaintiff's parole jail time credits, under agency policy, because the additional documents (1) were not signed and certified by the sentencing court, and (2) did not indicate whether the inmate's time served for the new criminal charge was concurrent with or consecutive to his parole jail time.[39]

20.     On or before January 18, 2001, Ms. Goslin reported her conclusions to Parole Officer Sackett.[40]

21.     On January 18, 2001, Mr. Sackett reviewed the matter and concurred with Ms. Goslin's conclusions.[41]  As a result, he sent an e-mail message to Ms. Jarvis, communicating the conclusions.[42]

### Plaintiff Was Conditionally Released on February 20, 2001, to Parole Supervision

22.     On February 20, 2001, Plaintiff was conditionally released to parole supervision.[43] Among the conditions of Plaintiff's parole were (1) the condition that "[Plaintiff] will not behave in such manner as to violate the provisions of any law to which [he is] subject which provide for a penalty of imprisonment, nor will [his] behavior threaten the safety or well-being of [himself] or others" and (2) the condition that "[Plaintiff] will notify [his] Parole Officer immediately any

---

[39]     (Dkt. No. 22, Part 22, ¶ 13 [Goslin Aff.].)

[40]     (Dkt. No. 22, Part 22, ¶ 14 [Goslin Aff.].)

[41]     (Dkt. No. 22, Part 22, ¶ 14 [Goslin Aff.]; Dkt. No. 22, Part 28 [Ex. F. to Goslin Aff.].)

[42]     (*Id.*)

[43]     (Dkt. No. 22, Part 43 [Ex. J to O'Malley Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint].)

15

time [he is] in contact with or arrested by any law enforcement agency."[44]  Later that day,

Plaintiff first reported to his Parole Officer, Defendant Ishmael Cruz.[45]

23.    At some point between February 20, 2001, and May 1, 2001, Plaintiff claimed to

Defendant Cruz that, because he had passed his maximum expiration date, he was incorrectly

placed on parole.[46]

24.    At some point between February 20, 2001, and May 1, 2001, Defendant Cruz

responded to Plaintiff's claim by informing Plaintiff that he (Defendant Cruz) had no authority to

alter Plaintiff's parole time, and that any adjustments must be made through the New York State

Parole Division's Central Office in Albany.[47]  In addition, because Plaintiff was literate,

Defendant Cruz informed Plaintiff that Plaintiff would have to write the letter to the Central

Office requesting an adjustment (as opposed to Defendant Cruz writing the letter for Plaintiff).[48]

---

[44]    (Dkt. No. 22, Part 43, ¶¶ 6, 8 [Ex. J to O'Malley Aff.].)

[45]    (Dkt. No. 22, Part 29, ¶ 4 [Cruz Aff.]; Dkt. No. 22, Part 30 [Ex. A to Cruz Aff.].)

[46]    (Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 22, Part 29, ¶¶ 5-6 [Cruz Aff.] ["It's very possible he said that to me."].)

[47]    (Dkt. No. 22, Part 29, ¶ 7 [Cruz Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint, asserting that "plaintiff was informed by Mr. Cruz that there was not anything he could do"], *accord*, Dkt. No. 25, Part 1, ¶ 10 [Plf.'s Opposition Aff.].)  *See also New York State Parole Handbook* § 3.3 (NYS Div. of Parole, February 2005) (not listing a duty to investigate claims of invalid parole as among the responsibilities of a field parole officer).

[48]    (Dkt. No. 22, Part 29, ¶¶ 8-9 [Cruz Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint, asserting that "plaintiff was informed by Mr. Cruz that . . . plaintiff would have to hire a Attorney"], *accord*, Dkt. No. 25, Part 1, ¶ 10 [Plf.'s Opposition Aff.].)

### While on Parole, Plaintiff Committed Another Crime,
### Causing His Parole to Be Revoked

25.     On May 1, 2001, an Albany Police Officer arrested Plaintiff for robbery.[49]

26.     At some point between May 1, 2001, and May 4, 2001, Defendant Cruz learned of Plaintiff's arrest.[50]  He investigated the matter, and recommended to his supervisor that a parole warrant be issued, charging Plaintiff with violating the conditions of his parole.[51]

27.     As a result, on May 4, 2001, Defendant Cruz's supervisor issued Parole Warrant No. 349107.[52]  Later that day, Plaintiff was released with respect to the new robbery charge.[53] However, he remained in local custody pursuant to Parole Warrant No. 349107.[54]

28.     On May 10, 2001, the New York State Division of Parole's Board of Parole held a Preliminary Violation Hearing regarding Parole Warrant No. 349107.[55]  The Hearing Officer was

---

[49]     (Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 25, Part 1, ¶ 11 [Plf.'s Opposition Aff.]; Dkt. No. 22, Part 45 [Ex. K to O'Malley Aff.]; Dkt. No. 22, Part 46 at 2-3 [Ex. L to O'Malley Aff.].)

[50]     (Dkt. No. 22, Part 29, ¶ 10 [Cruz Aff.].)

[51]     (Dkt. No. 22, Part 29, ¶¶ 10, 11 [Cruz Aff.].)

[52]     (Dkt. No. 22, Part 29, ¶ 11 [Cruz Aff.]; Dkt. No. 22, Part 45 [Ex. L to O'Malley Aff.].)

[53]     (Dkt. No. 22, Part 54, ¶ 5 [Muia Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint].)

[54]     (Dkt. No. 22, Part 54, ¶ 5 [Muia Aff.]; Dkt. No. 22, Part 45 [Ex. L to O'Malley Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint].)

[55]     (Dkt. No. 22, Part 45 at 4-5 [Ex. L to O'Malley Aff.]; Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 25, Part 1, ¶ 12 [Plf.'s Opposition Aff.].)

Defendant Jay Trembly.[56]  At the hearing, three witnesses testified for the prosecution: (1)

Defendant Cruz; (2) the victim of the robbery in question, whom Defendant Cruz transported to

the hearing; and (3) the Albany Police Officer who arrested Plaintiff for the robbery in question.[57]

In his defense, Plaintiff claimed that, because he had satisfied the maximum expiration date of

his sentence, he had not actually been on parole at the time of the robbery.[58]  However, Defendant

Trembly found the testimony of the arresting police officer and Defendant Cruz to be credible.[59]

As a result, Defendant Trembly (1) rejected Plaintiff's claim that he had not been on parole at the

time of the robbery and (2) held that there was probable cause to believe that Plaintiff had

violated the conditions of that parole.[60]

29.     On May 18, 2001, having been indicted for robbery, Plaintiff was arraigned, *and
held*, on that indicted charge.[61]  As a result, after May 18, 2001, Plaintiff was no longer held on

---

[56]     (Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 1, ¶ 6 and Attachment
thereto [Verified Complaint]; Dkt. No. 25, Part 1, ¶ 12 [Plf.'s Opposition Aff.].)

[57]     (Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 22, Part 29, ¶ 11 [Cruz
Aff.].)

[58]     (Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 1, ¶ 6 and Attachment
thereto [Verified Complaint]; Dkt. No. 25, Part 1, ¶ 12 [Plf.'s Opposition Aff.].)

[59]     (Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 22, Part 29, ¶ 11 [Cruz
Aff.].)

[60]     (Dkt. No. 22, Part 46 [Ex. M to O'Malley Aff.]; Dkt. No. 22, Part 29, ¶ 11 [Cruz
Aff.]; Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 25, Part 1, ¶ 12
[Plf.'s Opposition Aff.].)

[61]     (Dkt. No. 22, Part 54, ¶ 6 [Muia Aff.].)

18

Parole Warrant No. 349107.[62]

**Plaintiff Filed, and Prevailed on, a *Habeas Corpus* Petition**

30.     On May 10, 2001, while still in local custody in Albany, Plaintiff commenced a

*habeas corpus* proceeding in New York State Supreme Court, Albany County.[63]  Plaintiff's

*habeas corpus* petition sought to vacate Parole Warrant No. 349107 on the ground that his M.E.

date had expired on January 22, 2001 because of parole jail time credits he should have received

for previously being held in a county jail.[64]

31.     Plaintiff's *habeas corpus* proceeding was assigned to Attorney Patricia E.

O'Malley at the New York State Division of Parole.[65]  After thoroughly investigating the matter

using all of the resources at her disposal (including personally contacting local law enforcement

authorities to obtain a certificate of disposition), Ms. O'Malley concluded that Plaintiff was

essentially correct–he should have been awarded certain parole jail time credits for previously

being held in the Schenectady County Correctional Facility in 1999 and 2000.[66]  She promptly

communicated her conclusion to: (1) officials at the New York State Division of Parole, who

---

[62]     (Dkt. No. 22, Part 54, ¶¶ 6, 11-12 [Muia Aff.]; Dkt. No. 22, Part 33, ¶ 13
[O'Malley Aff.] [stating that the court order of May 31, 2001, granting Plaintiff's *habeas corpus
petition* did not result in Plaintiff's release from jail because, at that time, he was being held, not
for the parole violation, but on the underlying charge of robbery].)

[63]     (Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 22, Part
33, ¶ 2 [O'Malley Aff.]; Dkt. No. 22, Part 51 [Ex. R to O'Malley Aff.].)

[64]     (Dkt. No. 1, ¶ 6 and Attachment thereto [Verified Complaint]; Dkt. No. 22, Part
33, ¶¶ 2, 12 [O'Malley Aff.]; Dkt. No. 22, Part 51 [Ex. R to O'Malley Aff.].)

[65]     (Dkt. No. 22, Part 33, ¶ 2 [O'Malley Aff.].)

[66]     (Dkt. No. 22, Part 33, ¶¶ 3-10, 12 [O'Malley Aff.].)

prepared a new parole jail time certificate;[67] and (2) the Assistant Attorney General assigned to defend Plaintiff's *habeas corpus* proceeding, informing him that the Division of Parole did not oppose the relief sought by Plaintiff in that proceeding.[68]

32.     On May 31, 2001, the Court issued an order granting the relief sought in Plaintiff's *habeas corpus* petition, in part because the New York State Division of Parole did not oppose that relief.[69]

## III.    ANALYSIS

### 1.     Whether Plaintiff Has Established a Fourteenth Amendment Due Process Claim Against Defendants Goord, Senkowski, and Cruz

Defendants argue that Plaintiff has failed to establish a Fourteenth Amendment due process claim against Defendants Goord, Senkowski, and Cruz because Plaintiff has not shown (or even alleged) anything more than negligence on the part of those Defendants, which is not actionable under 42 U.S.C. § 1983.  (Dkt. No. 22, Part 55 at 5-6 [Mem. of Law].)  Liberally construed, Plaintiff's response is that he has established a due process claim by offering evidence that Defendants Goord, Senkowski, and Cruz acted intentionally or recklessly.  (Dkt. No. 25, Part 2 at 18-28 [Plf.'s Opposition Mem. of Law].)  Plaintiff's argument fails.

Negligent acts by state actors that result in a loss of liberty are insufficient to support a

---

[67]     (Dkt. No. 22, Part 33, ¶ 12 [O'Malley Aff.]; Dkt. No. 22, Part 51 [Ex. S to O'Malley Aff.].)

[68]     (Dkt. No. 22, Part 33, ¶ 11 [O'Malley Aff.].)

[69]     (Dkt. No. 22, Part 51 [Ex. R to O'Malley Aff.]; Dkt. No. 1, ¶ 6 [Verified Complaint].)

due process claim.  *See Daniels v. Williams*, 474 US 327, 328 (1996) ("We conclude that the Due

Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss

of or injury to life, liberty, or property.").  Indeed, several cases exist applying this rule to facts

analogous to those in the current case.  *See Wadhams v. Procunier,* 772 F.2d 75, 77-78 (4th Cir.

1985) (no due process violation for failure to give former Virginia inmate credit for seven days

spent in Florida jail, where failure was due merely to "mistake or inadvertence" and not a lack of

procedures); *Baptiste v. Elrod*, 85-CV-2015, 1986 WL 5747, at *3 & n.5 (N.D. Ill. May 14,

1986) (even if allegations of former inmate's complaint were correct, there would have been no

due process violation in his having been held for 21 days beyond his lawful release date because

of a mistake).[70]

     Here, contrary to what Plaintiff argues, there is nothing in the record suggesting that

Defendants Goord, Senkowski, and Cruz were anything more than negligent (if they were

negligent at all).  Essentially, Plaintiff reasons that Defendants possessed the sufficient level of

knowledge because they "knew that [Plaintiff] was protesting his retention in custody and

illegality on parole."  (*See*, *e.g.*, Dkt. No. 25, Part 2 at 20 [Plf.'s Opposition Mem. of Law].)

However, that fact alone does not mean Defendants were acting *intentionally* or *recklessly*.  If it

did, then a defendant could never be deemed to have made a mistake during the calculation of a

prisoner's sentence or parole when the defendant knew that the plaintiff was protesting that

--------

[70]    *See also Baker v. McCollan*, 443 U.S. 137, 139-140, 144-146 (1979) (no due
process violation where a sheriff negligently held a person in jail for three days for a narcotics
offense, because of mistaken identity); *Williams v. Coughlin*, 91-CV-0083, 1993 WL 481392, at
*2-3 (W.D.N.Y. Nov. 17, 1993) (no due process violation where prisoner was mistakenly or
negligently held in punitive confinement for twenty days longer than warranted).

sentence or parole–which is clearly not the case.[71]

Rather, the facts of this case suggest that Plaintiff's claim concerned a complicated

sentencing and parole issue.  (*See generally* Dkt. No. 22, Part 33 [O'Malley Aff.].)[72]  Defendant

Senkowski (and various employees of Clinton C.F.) responded promptly and appropriately to

Plaintiff's claim.  (*See*, *supra*, Statement of Fact Nos. 6-13, 18-21.)  Specifically, after

investigating Plaintiff's claim, they advised Plaintiff that the Department of Correctional

Services ("DOCS"), of which Clinton C.F. is part, does not have the authority to grant the relief

requested by Plaintiff, and that Plaintiff would have to contact the New York State Division of

Parole.  (*See*, *supra*, Statement of Fact Nos. 6-8, 13.)[73]  Defendant Cruz offered similar advice,

instructing Plaintiff to write a letter directly to the New York State Division of Parole's Central

Office in Albany, requesting an adjustment.  (*See*, *supra*, Statement of Fact No. 24.)  However,

Plaintiff chose not to follow that advice.  (*See*, *supra*, Statement of Fact Nos. 14-17, 24-25

---

[71]     *See Baker*, 443 U.S. at 141, 143-144 (holding that there was no due process violation where defendant erroneously held plaintiff in jail for three days despite plaintiff's protests of mistaken identity); *Williams*, 1993 WL 481392, at *2-3 (holding that there was no due process violation where defendants erroneously held plaintiff in punitive confinement for twenty days too long despite plaintiff's numerous letters of protest to prison officials); *Baptiste*, 1986 WL 5747, at *1 & n.5 (finding that it would "appear that a mistake was made in holding plaintiff beyond his lawful sentence" even though "[d]uring plaintiff's period of incarceration . . . he made several inquiries and lodged several complaints as to the appropriateness of the continued detention").  *Cf. Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) (holding that sheriff *deliberately* detained a prisoner thirty days beyond the expiration of his sentence, in violation of plaintiff's due process rights, in part because plaintiff protested his continued confinement and *there was no facially valid commitment order*).

[72]     (*See also* Dkt. No. 26, Part 2 [O'Malley Reply Affirm. ¶ 8 ["This case is not simple precisely because of plaintiff's continued criminal activity."].)

[73]     *See also* N.Y. Exec. Law § 259-c(12) ("The state board of parole shall . . . in any case where a person is entitled to jail time credit . . . certify to the person in charge of the institution in which such person's sentence is being served the amount of such credit.").

[indicating that instead he chose, among other things, to commit another crime, once on parole].) Thus, fault cannot be placed with Defendants Goord, Senkowski, and Cruz.

Although my conclusion needs no further support, I note that the problem that occurred here appears to have been partially due to the fact that the New York State Division of Parole did not specifically remind[74] Plaintiff that, to obtain the relief requested, Division of Parole policy (as articulated by Division of Parole employee Sherie Goslin) required Plaintiff to provide the Division of Parole a "signed and certified disposition from the Sentencing Court which specifies the dates of the inmate's time served for the local charges and whether that time was served concurrent with or consecutive to parole jail time."  (*See*, *supra*, Statement of Fact No. 10.) However, even if the Division of Parole had a legal duty to remind Plaintiff of this fact, that legal duty would not confer liability onto Defendants Goord and Senkowski, who are employed by DOCS and are in no way responsible for the actions (or inactions) of the Division of Parole.

As a result, I recommend that the Court dismiss Plaintiffs' Fourteenth Amendment due process claim against Defendants Goord, Senkowski, and Cruz.

---

[74]     I assume, without deciding, that the substance of Section 1.2 of the current *New York State Parole Handbook* was available to Plaintiff during the fall of 2000.  *See New York State Parole Handbook* § 1.2 (N.Y.S. Div. of Parole, Feb. 2005) ("If, after contacting the Inmate Records Coordinator, you believe there is still a problem with your time calculation, a letter should be sent to the Clerk of the Court where the sentence was imposed.  The letter should indicate the specific problem and/or what information is being sought.  You should request that certified copies of your sentencing minutes and/or jail time be forwarded to the Inmate Records Coordinator to allow for recomputation of your sentence.").

**2.      Whether Plaintiff Has Established a Fourteenth Amendment Equal
Protection Claim Against Defendants Goord, Senkowski, and Cruz**

Defendants argue that Plaintiff has not established a Fourteenth Amendment equal

protection claim against Defendants Goord, Senkowski, and Cruz because: (1) Plaintiff has not

established (or even alleged) that he was treated differently than any other inmate; (2) even if he

was treated differently than other inmates, Plaintiff has not established that Defendants acted

with "purposeful" intent, and (3) in any event, Plaintiff has not established (or even alleged any

facts indicating) that he was a member of "an identifiable or suspect class."  (Dkt. No. 22, Part 55

at 6-8 [Mem. of Law].)  Liberally construed, Plaintiff's response is that Defendants were

purposefully treating Plaintiff differently than other inmates who complained about the

calculation of their sentences, because Plaintiff had successfully made a similar complaint back

in 1999.  (Dkt. No. 25, Part 1 at 2 [Plf.'s Opposition Aff.]; *see generally* Dkt. No. 25, Part 2

[Plf.'s Opposition Mem. of Law].)  Defendants are correct.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend

XIV, § 1.  This "is essentially a direction that all persons similarly situated shall be treated alike."

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  "To prove an

equal protection violation, claimants must prove purposeful discrimination . . . directed at an

identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations

omitted).

Here, Plaintiff presents no evidence that the policy in question (i.e., the policy of directing

persons complaining about the calculation of their sentence to provide certain signed and

24

certified documents directly to the New York State Division of Parole) discriminated against a particular class of inmates, of which he was a member.  Rather, the evidence presented suggests that the policy was applied to all inmates and parolees.  (Dkt. No. 22, Part 29, ¶¶ 6-9 [Cruz Aff.]; *see*, *supra*, Statement of Fact No. 10.)  Moreover, Plaintiff presents no evidence that, even if there was some form of discrimination, that discrimination was "purposeful."  Rather, all the persons who responded to Plaintiff's claim appear to have done so promptly and fairly.

As a result, I recommend that the Court dismiss Plaintiffs' Fourteenth Amendment Equal Protection claims against Defendants Goord, Senkowski, and Cruz.

### 3.     Whether Plaintiff Has Established an Eighth Amendment Cruel-and-Unusual-Punishment Claim Against Defendants Goord, Senkowski, and Cruz

Defendants argue that Plaintiff has failed to establish an Eighth Amendment cruel-and-unusual-punishment claim against Defendants Goord, Senkowski, and Cruz because Plaintiff has not demonstrated that he was denied "the minimal civilized measure of life's necessities," occurring through the "deliberate indifference" of prison officials.  (Dkt. No. 22, Part 55 at 8-10 [Mem. of Law].)  Liberally construed, Plaintiff's response is that (1) the mere fact that he was confined beyond his maximum expiration date constitutes "cruel and unusual punishment" under the Eighth Amendment if it was the result of deliberate indifference to the prisoner's liberty interest, and (2) he has shown that Defendants failed to act, or took only ineffectual action, under circumstances indicating that their response to Plaintiff's claim was a product of deliberate indifference to Plaintiff's plight.  (Dkt. No. 25, Part 2 at 12-16 [Plf.'s Opposition Mem. of Law].)  Plaintiff's argument fails, because his second premise is factually incorrect.

"To establish § 1983 liability [on the part of a prison official who detained a prisoner beyond the term of his sentence], a plaintiff must . . . demonstrate [knowledge by the prison official and] . . . that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight.  Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention." *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *accord, McCants v. Jones*, 98-CV-6337, 1999 WL 804009, at *3 (W.D.N.Y. Sept. 30, 1999).[75]

Here, Plaintiff has offered no facts showing that Defendants Goord, Senkowski, and Cruz acted with deliberate indifference to his plight.[76]  Rather, the facts indicate that Defendants Goord, Senkowski, and Cruz, to the extent they had a duty to respond to Plaintiff's claim, did so promptly and with attentiveness.  (*See*, *supra*, Statement of Fact Nos. 6-13, 18-21, 24.)  I note that the facts indicate that, before New York State Division of Parole Attorney Patricia O'Malley could resolve the issues presented by Plaintiff's claim, she had to request and obtain a "Certificate of Disposition" from the Schenectady City Court.  (Dkt. No. 22, Part 33, ¶ 9

---

[75]     *See also Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as a wanton infliction of unnecessary pain [under the Eighth Amendment].").

[76]     *See generally Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993) ("We cannot say that this investigation [by the parole board] was so inept or ineffectual that deliberate indifference on the part of the parole board officials may be inferred from the evidence here."); *Royal v. Durison*, 319 F. Supp.2d 534, 538-539 (E.D. Pa. 2004) (deliberate indifference could not be inferred where defendant investigated the basis of plaintiff's claim regarding his sentence calculation, and notified plaintiff that defendant was unable to change plaintiff's sentence, as requested by plaintiff); *Douglas v. Murphy*, 6 F. Supp.2d 430, 432 (E.D. Pa. 1998) ("[Plaintiff] has not demonstrated that defendant . . . either failed to investigate, or that his investigation was so inept or ineffectual that the court may infer deliberate indifference on his part.").

[O'Malley Aff.]; Dkt. No. 22, Part 50 [Ex. Q to O'Malley Aff.].)  As a result, Plaintiff had not

provided Defendants Goord, Senkowski, and Cruz with the documents necessary to support his

claim.  "The fact that the sources and documents [defendant] consulted did not reveal [the

grounds in support of plaintiff's claim] does not support a finding of deliberate indifference on

the part of [defendant]."  *McCants*, 1999 WL 804009, at *3.

Furthermore, Plaintiff has not demonstrated a *causal connection* between the Defendant

Goord's, Defendant Senkowski's, and Defendant Cruz's response to the problem and the

infliction of the unjustified detention.  Specifically, Defendants Goord, Senkowski, and Cruz did

not have the *authority* to correct Plaintiff's sentence.  (*See*, *supra*, Statement of Fact Nos. 6-8, 10,

13, 19, 24.)  As a result, their alleged *failure* to act could not have *caused* Plaintiff's continued

detention.

As a result, I recommend that the Court dismiss Plaintiffs' Eighth Amendment cruel-and-

unusual-punishment claim against Defendants Goord, Senkowski, and Cruz.

### 4.    Whether Plaintiff Has Established the Personal Involvement of Defendants Goord, Senkowski, and Cruz

Defendants argue that Plaintiff's claims against Defendants Goord, Senkowski, and Cruz

should be dismissed because Plaintiff has not established that Defendants Goord, Senkowski, and

Cruz were personally involved in the alleged constitutional violations.  More specifically,

Defendants argue that: (1) Plaintiff has not shown (or even alleged) that Defendant Goord

directly participated in the alleged constitutional violations, was aware of those violations,

created a policy or custom under which those violations occurred, was grossly negligent in

supervising subordinates who (allegedly) committed those violations, or exhibited deliberate

27

indifference to Plaintiff's rights; (2) Plaintiff has not shown that Defendant Senkowski directly
participated in the alleged constitutional violations, failed to exercise any authority he had to
remedy those violations, created a policy or custom under which those violations occurred, was
grossly negligent in supervising subordinates who (allegedly) committed those violations, or
exhibited deliberate indifference to Plaintiff's rights; and (3) Plaintiff has not shown that
Defendant Cruz directly participated in the alleged constitutional violations that occurred before
Plaintiff was released from Clinton C.F. on February 20, 2001, or that Defendant Cruz
intentionally or recklessly violated Plaintiff's constitutional rights with regard to Plaintiff's
incarceration in the Albany County Jail in May of 2001.  (Dkt. No. 22, Part 55 at 2-4 [Defs.'
Mem. of Law].)

Liberally construed, Plaintiff's response is that he has shown the personal involvement of
Defendants Goord, Senkowski, and Cruz by showing that: (1) Defendant Goord created a policy
or custom under which the alleged constitutional violations occurred and/or Defendant Goord
was grossly negligent in supervising subordinates who committed those violations; (2) Defendant
Senkowski directly participated in the violations in that he personally discussed Plaintiff's claim
and reviewed Plaintiff's jail time credits, and/or Defendant Senkowski was grossly negligent in
supervising subordinates who committed those violations; and (3) Defendant Cruz directly
participated in the violations by intentionally or recklessly failing to investigate the merits of
Plaintiff's claim after being repeatedly advised of that claim, and/or by intentionally or recklessly
filing a false parole warrant against him after Plaintiff had repeatedly informed him he was not
supposed to be on parole.  (Dkt. No. 25, Part 2 at 23-28 [Plf.'s Opposition Mem. of Law].)
Plaintiff's arguments fail as a matter of law and/or fact.

28

### A.    Defendant Goords and Senkowski

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of liability in a Section 1983 action.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Supervisory officials are personally involved in a constitutional violation if: (1) they directly participated in that violation; (2) they failed to remedy that violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a policy or custom under which the violation occurred; (4) they were grossly negligent in managing subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

Here, Defendants are correct that Plaintiff has failed to establish the personal involvement of Defendants Goord and Senkowski.  With regard to Plaintiff's response, there is absolutely no evidence in the record suggesting (nor are there even any factual allegations indicating) that Defendants Goord or Senkowski either (1) created a policy or custom under which the alleged constitutional violations occurred, or (2) was grossly negligent in supervising subordinates who committed those violations.

Rather, the facts indicate that (1) Plaintiff's claim involved a complicated sentencing and parole issue, (2) the only policy or custom at issue (i.e., the requirement that a person challenging the calculation of his sentence provide certain signed and certified documents directly to the New York State Division of Parole) was created by the Division of Parole, which was not under the

29

supervision of Defendants Goord or Senkowski, (3) Defendant Senkowski (and certain employees of Clinton C.F.) responded promptly and appropriately to Plaintiff's claim, and (4) in any event, the problem was caused in part by Plaintiff's own failure to follow available procedures.  (*See*, *supra*, Statement of Fact Nos. 6-13, 18-21, 24, and 31.)

Plaintiff's alternative argument that Defendant Senkowski was personally involved in the alleged violations due to the various pieces of correspondence to and from him regarding Plaintiff's claim requires more discussion.  The first problem with Plaintiff's reliance on these communications is that they do not refer to a constitutional violation, only a reasonable mistake (or maybe an act of negligence) regarding the calculation of Plaintiff's sentence and/or parole-- which (as explained above) is not a constitutional violation.[77]  Thus, these communications would not have been enough to notify Defendant Goord of a constitutional violation.  The second problem with these communications is that, even if they were enough to make Defendant Goord aware of a constitutional violation, he could not be said to have been personally involved in that violation since, as was repeatedly explained to Plaintiff, Defendant Goord had no authority (and, indeed, no employees of Clinton C.F. had the authority) to grant the relief requested by Plaintiff. Rather, that authority lay only with the New York State Division of Parole, which it was up to Plaintiff to persuade (by submitting certain signed and certified documents directly to them).

----

[77]     This various correspondence consisted of the following: (1) Plaintiff's November 7, 2000, letter to Defendant Senkowski (*see*, *supra*, Statement of Fact No. 5); (2) Defendant Senkowski's November 16, 2000, memorandum to Plaintiff (*see*, *supra*, Statement of Fact No. 9); (3) Parole Officer Sackett's November 30, 2000, e-mail message to Defendant Senkowski (*see*, *supra*, Statement of Fact No. 12); and (4) Defendant Senkowski's November 30, 2000, memorandum to Plaintiff (*see*, *supra*, Statement of Fact No. 13).

### B.    Defendant Cruz

Defendants are also correct that Plaintiff has failed to establish the personal involvement of Defendant Cruz.  With regard to Plaintiff's response, there is absolutely no evidence in the record suggesting that Defendant Cruz intentionally or recklessly failed to investigate the merits of Plaintiff's claim because (1) Defendant Cruz had no *duty* to investigate the merits of Plaintiff's claim, and (2) in any event, no evidence exists that Defendant Cruz acted intentionally or recklessly in not investigating Plaintiff's claim (e.g., with ill will or malice toward Plaintiff, or with a gross disregard for a known legal requirement).  Rather, the evidence indicates that Defendant Cruz responsibly advised Plaintiff of the proper procedure to follow.

With regard to Plaintiff's alternative argument that Defendant Cruz intentionally or recklessly filed a false parole warrant against him, there is absolutely no evidence in the record in support of this claim.  Plaintiff was on parole, which involved certain conditions.  He violated those conditions.  Defendant Cruz recommended that a Parole Warrant be lodged against Plaintiff.  The fact that the Parole Warrant was subsequently vacated (after an extraordinary investigation by the New York State Division of Parole) does not make Defendant Cruz's "mistake" (if you can call it that) intentional or reckless.  Nor does the fact that Plaintiff had previously claimed to Defendant Cruz that his (Plaintiff's) status as a parolee was in error make that "mistake" intentional or reckless.

As a result, I recommend that the Court dismiss Plaintiffs' Eighth and Fourteenth Amendment claims against Defendants Goord, Senkowski, and Cruz.

**5.      Whether Defendants Goord, Senkowski, and Cruz Are Entitled to Qualified
Immunity**

Defendants argue that Defendants Goord, Senkowski, and Cruz are each entitled to

qualified immunity because: (1) Plaintiff has not established (or even alleged) that Defendant

Goord was aware of Plaintiff's claim, which in any event was a matter to be resolved by local

authorities and the New York State Division of Parole; (2) although Defendant Senkowski was

aware of Plaintiff's claim, Defendant Senkowski's good-faith reliance on assigned staff who

reviewed and investigated the matter and reported to him entitles him to qualified immunity; and

(3) Defendant Cruz's policy and practice of referring parolees to the New York State Division of

Parole's Central Office for modification of their parole time computations is reasonable in light

of the undisputed proof that the majority of parolees he is assigned complain, as Plaintiff did, that

their time computations are incorrect.  (Dkt. No. 22, Part 55 at 12-14 [Mem. of Law].)  Liberally

construed, Plaintiff's response is that, because Defendants knew that a prisoner's right to be

released from prison upon the expiration of his sentence is well established, they are not entitled

to qualified immunity.  (Dkt. No. 25, Part 2 at 29-30 [Plf.'s Opposition Mem. of Law].)

Plaintiff's argument fails.

"Once qualified immunity is pleaded, Plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Williams*, 781 F.2d at

322 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  Regarding the issue of whether a

particular right was *clearly established*, courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).[78]  Regarding the issue of whether *a reasonable person would have known* he was violating such a clearly established right, this "objective reasonableness"[79] test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).  As the Supreme Court explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.  Furthermore, courts in the Second Circuit recognize that "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter

---

[78]    *See also Calhoun v. N.Y.S. Div. of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[79]    *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457 U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

of law." *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992] [citing Supreme Court cases]).

Here, Defendant Goord is protected by qualified immunity.  Even if Plaintiff had a clearly established right that was violated, no evidence exists suggesting that Defendant Goord knew, or reasonably should have known, that he was violating that right.  For example, Plaintiff does not offer any sworn statements or other evidence indicating that he sent Defendant Goord a letter, or that Defendant Goord learned of a letter to anyone from Plaintiff, raising the claim in question. (*See generally* Dkt. No. 1 [Verified Complaint]; Dkt. No. 25, Part 1 [Plf.'s Opposition Affidavit]; Dkt. No. 25, Part 3 [Exhibits to Plf.'s Opposition Mem. of Law].)

In addition, Defendant Senzkowski is protected by qualified immunity.  Again, even if Plaintiff had a clearly established right that was violated, no facts exist suggesting that Defendant Senkowski knew, or reasonably should have known, that he was violating that right.  Rather, the evidence indicates that: (1) upon learning of Plaintiff's claim, Defendant Senkowski promptly investigated that claim personally and with the assistance of his staff; (2) Plaintiff's claim involved complicated sentencing and parole issues; (3) Defendant Senkowski and his staff reasonably concluded, and advised Plaintiff, that Clinton C.F. could not grant Plaintiff the relief he requested, but that Plaintiff had to obtain that relief from the New York State Division of Parole; and (4) in any event, Plaintiff had not provided to Defendant Senkowski and his staff all of the documents necessary to conclude that Plaintiff's sentence calculation was in error (i.e., Plaintiff had failed to obtain the Certificate of Disposition attached as Exhibit Q to Ms. O'Malley's Affidavit).  Under the circumstances, Defendant Senkowski's actions were

objectively reasonable and thus protected by qualified immunity.[80]

Finally, Defendant Cruz is protected by qualified immunity.  There is no evidence that Defendant Cruz *fabricated* Plaintiff's parole violation or recommended that a parole warrant be issued *knowing the warrant lacked probable cause*.  Rather, the evidence shows only that Plaintiff claimed to Defendant Cruz that he (Plaintiff) was wrongly on parole–a claim that Defendant Cruz testified that he received often from parolees.  Even if Defendant Cruz made a mistake (which I do not think he did), he would still be protected by qualified immunity.[81]  I note that, to the extent Plaintiff's complaint could be liberally construed to claim that Defendant Cruz is liable because he presented the government's case, testified, and/or presented evidence (including a witness) at Plaintiff's Preliminary Violation Hearing, Defendant Cruz would be entitled to *absolute* immunity.[82]

---

[80]     *See Reid v. Artuz*, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (actions by prison superintendent were objectively reasonable, and thus protected by qualified immunity, where he promptly investigated asthmatic inmate's claim of denial of breathing equipment, and assigned members of his staff to investigate and report their findings back to him).

[81]     *See Scott v. Almenas*, 143 F.3d 105, 112-113 (2d Cir. 1998) (stating that a parole officer who, having decided that plaintiff had probably violated his parole, has recommended that a parole warrant be issued will generally be protected by qualified immunity, absent evidence that he fabricated the parole violation and knowingly arrested plaintiff without probable cause); *Sandson/Sanchez v. Harris*, 96-CV-4675, 1998 U.S. Dist. LEXIS 22923, at *27-32 (E.D.N.Y. June 29, 1998) (parole officer was protected by qualified immunity where there was no evidence that his violation of parole report was false, and, at most, he made a mistaken judgment); *Taylor v. Sullivan*, 980 F. Supp. 697, 709-710 (S.D.N.Y. 1997) (finding that, at the very least, the parole officer was protected by qualified immunity where there was no evidence that he knew the reports he filed were false).

[82]     *See Scott*, 143 F.3d at 112-113 (parole officers receive absolute immunity for actions that are prosecutorial in nature, such as presenting a case for revocation to hearing officers); *Sandson/Sanchez*, 1998 U.S. Dist. LEXIS 22923, at *25-27 (parole officer who presented government's case, and testified, at plaintiff's parole revocation proceeding was entitled to absolute immunity); *David v. Rodriguez*, 88-CV-2115, 1989 U.S. Dist. LEXIS 10464,

As a result, I recommend that the Court dismiss Plaintiffs' Eighth and Fourteenth Amendment claims against Defendants Goord, Senkowski, and Cruz.

**6.      Whether the Absence of Any "Physical Injury" Limits An Award to Plaintiff**

Defendants argue that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, *et seq.*,[83] precludes an award of damages to Plaintiff (other than nominal damages) because he alleges only "mental anguish" and not any physical injury.  (Dkt. No. 22, Part 55 at 11-12 [Mem. of Law].)  Plaintiff offers no response to this argument.  (*See generally* Dkt. No. 25, Part 2 [Plf.'s Opposition Mem. of Law].)

In *Thompson v. Carter*, the Second Circuit held that the section of the PLRA in question applies only to compensatory damages, not to punitive damages.  *Thompson*, 284 F.3d at 418. *Thompson v. Carter*, 284 F.3d 411, 418 (2d. Cir. 2002).  However, it appears that, while punitive damages are generally available in Section 1983 cases, they are not available here because (1) Plaintiff did not request them, and (2) the facts, as alleged, do not support an award of punitive damages.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (holding that punitive damages are

---

at *5-6 (S.D.N.Y. Sept. 5, 1989) (parole officer who presented government's case at plaintiff's parole revocation hearing was entitled to absolute immunity); *Kennedy v. Valentine*, 88-CV-7597, 1989 U.S. Dist. LEXIS 13746, at *3-7 (S.D.N.Y. Nov. 20, 1988) (parole officer who allegedly filed false parole warrant against plaintiff, and allegedly presented false evidence to the hearing officer, was protected by absolute immunity); *Miller v. Garrett*, 695 F. Supp. 740, 745 (S.D.N.Y. 1988) (parole officer who presented government's case, testified, and presented evidence including a witness, at plaintiff's parole revocation hearing was entitled to absolute immunity); *Johnson v. Kelsh*, 664 F. Supp. 162, 165-166 (S.D.N.Y. 1987) (parole officer who presented evidence to hearing officer at plaintiff's parole revocation hearing was entitled to absolute immunity).

[83]      Specifically, Defendants rely on 42 U.S.C. §1997e(e), which provides that "no Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental anguish or emotional injury suffered while in custody without a prior showing of physical injury."

36

available in a §1983 action "when the Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

In any event, because I have already found that adequate reason exists to recommend the granting of defendants' motion for summary judgment, I need not, and do not, reach Defendants' alternative argument that the absence of any "physical injury" limits an award to Plaintiff.

### 7.    Whether Plaintiff Has Exhausted His Administrative Remedies Regarding His Eighth Amendment Conditions-of-Confinement Claim

Defendants argue that the PLRA requires dismissal of Plaintiff's entire action because Plaintiff never filed a grievance while he was at Clinton C.F. regarding his Eighth Amendment conditions-of-confinement claim.  (Dkt. No. 22, Part 55 at 10-11 [Mem. of Law].)  Liberally construed, Plaintiff's response is that (1) he did file such a grievance, and (2) in any event, he did everything in his power to informally resolve the problem, and was frustrated from accomplishing that goal due to Defendants' efforts.  (Dkt. No. 25, Part 2 at 10-11 [Plf.'s Opposition Mem. of Law].)

Again, because I have already found that adequate reason exists to recommend the granting of defendants' motion for summary judgment, I need not, and do not, reach defendants' alternative argument that Plaintiff failed to exhaust his administrative remedies–an issue whose resolution appears somewhat complicated in light of certain exhaustion cases decided last year by the Second Circuit.[84]

---

[84]     *See Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 676, 679 (2d Cir. 2004); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004).

**8.    Whether Plaintiff's Claim Against Defendant Trembly Should Be Dismissed Due to Plaintiff's Failure to Serve that Defendant**

In addition, Defendants argue that Plaintiff's claim against Defendant Trembly should be dismissed due to Plaintiff's failure to serve that Defendant.  (Dkt. No. 22, Part 2, ¶ 2 [Seaman Aff.].)  Even liberally construed, Plaintiff's response does not address this argument.  (*See generally* Dkt. No. 25, Part 2 [Plf.'s Opposition Mem. of Law].)  Defendants are correct.

The docket indicates that Jay Trembly was never served with Plaintiff's Complaint.  (*See* Dkt. No. 7 [unexecuted summons for Trembly]; Dkt. No. 17 [letter, dated 4/21/03, from defense counsel stating that Trembly has not been served].)  Plaintiff was given notice of his failure to serve, and the possibility of dismissal, from: (1) the unexecuted summons for Trembly contained in the docket; (2) an April 21, 2003, letter from defense counsel to the Court Clerk, with a copy to Plaintiff, stating that there is no "evidence in the Court docket that personal service has been effected upon Defendant Trembly"; and (3) Defendants' motion papers, which assert that Trembly is not properly a defendant in this action.  (Dkt. No. 7 [unexecuted summons]; Dkt. No. 17 [letter]; Dkt. No. 22, Part 2, ¶ 2 [Seaman Aff.].)  *See Woolfolk v. Thomas*, 725 F. Supp. 1281, 1285 (N.D.N.Y. 1989) (dismissing complaint without prejudice insofar as it named one defendant where plaintiff received notice of that defendant's inadequate-service argument through other defendants' motion papers) (citations omitted).

Under the circumstances, I recommend that Plaintiff's claim against Defendant Trembly be dismissed without prejudice for failure to serve, and failure to prosecute, under Fed. R. Civ. P. 4(m), Fed. R. Civ. P. 41(b),[85] and N.D.N.Y. L.R. 41.2(a).

---

[85]    *See Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Rule 41[b], a district court retains the inherent power to dismiss a

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 22) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendants **GOORD**, **SENKOWSKI**, and **CRUZ** be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's claim against Defendant **TREMBLY** be **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 4(m), Fed. R. Civ. P. 41(b), and N.D.N.Y. L.R. 41.2(a).[86]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed R. Civ. P. 6(a), 6(e), 72.

Dated: August 25, 2005
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

plaintiff's complaint, *sua sponte*, for failure to prosecute--for example, for failure to timely serve the complaint after filing) (citations omitted).

[86]      **In the event that Plaintiff considers refiling his complaint against Jay Trembly, Plaintiff should consider not only any statute-of- limitations argument that might be raised by Mr. Trembly but also the potentially preclusive effect of the Court's final order in this action under the doctrine of collateral estoppel**.